BEFORE THE UNITED STATES JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

| | |
|---|---|
| IN RE: APPLE INC. APP STORE SIMULATED CASINO-STYLE GAMES LITIGATION | MDL Docket No. 2985 |

**APPLE INC.'S REPLY TO PLAINTIFF KEISHA LOWE'S
INTERESTED PARTY RESPONSE**

# INTRODUCTION

All parties and interested parties to this proceeding except one support centralization in the Northern District of California, pursuant to 28 U.S.C. § 1407. Keisha Lowe ("Lowe"), a plaintiff in one of the potential tag-alongs in that district, has raised a lone objection to centralization. In so doing, Lowe ignores the primary goal of Section 1407—to "eliminate duplicative discovery, prevent inconsistent pretrial rulings, and conserve the resources of the parties, their counsel and the judiciary." *In re Nine W. LBO Sec. Litig.*, 464 F. Supp. 3d 1383, 1385 (J.P.M.L. 2020). Lowe's alternative plan, requiring infeasible informal coordination and uncertain 28 U.S.C. § 1404 transfers, would promote the risk of multiple motion filings, potential inconsistent pretrial rulings as well as duplicative discovery and efforts by the courts and the parties—the very opposite of the goals that the Panel champions through Section 1407 centralization. *Id.*

Lowe does not dispute that the Actions[1] involve one or more common questions of fact.[2] Nor does Lowe dispute that centralization in the Northern District of California, the litigation's center of gravity, will promote the just and efficient conduct of the Actions or serve the convenience of parties and witnesses. Rather, Lowe opposes centralization because the Actions allegedly involve a "minimal number" of insufficiently complex actions, and instead advocates that the goals of centralization can be achieved alternatively through Section 1404 transfers. Defendant Apple Inc. ("Apple"), the party sued in nine separate Actions, disagrees and easily dispatches these arguments below.

*First*, Lowe relies on inapposite cases to argue that Apple has a heavier burden to establish grounds for centralization due to the supposedly "minimal" number of constituent actions. But each of those cases cited involved fewer actions and different considerations in fewer districts than at issue here. Here, nine Actions are pending in seven districts—with additional cases virtually certain to be filed. Dkt. 1 at 5.

*Second*, as explained in Apple's Motion, the Actions undeniably share a common set of facts and allegations that are subject to common defenses and motion practice. And there is sufficient factual complexity to generate complex discovery. Centralization for pretrial proceedings under Section 1407 is thus necessary to eliminate duplicative discovery, prevent inconsistent pretrial rulings, and promote judicial economy.

---

[1] "Actions" refer to the original six putative class actions against Apple in six different federal districts ("Original Actions") and the three potential "tag-along" actions filed in the Northern District of California, *Nelson, et al. v. Apple Inc.*, No. 5:21-cv-00553, *Lowe v. Apple Inc.*, No. 4:21-cv-01144, and *Hoose v. Apple Inc.*, No. 5:21-cv-01676. Capitalized terms not otherwise defined herein shall have the same meaning given in Apple's Motion to Transfer ("Motion").

[2] This inquiry is different from the class certification inquiry, and Apple thus reserves all of its defenses to class certification, as more fully set forth in Dkt. 1 at n.4.

*Third*, centralization by other means, such as informal coordination, depends on six to fifteen motions brought under Section 1404 succeeding, an outcome which cannot be predicted and would not eliminate the multidistrict nature of the Actions in any event. Absent centralization, seven different districts would be burdened with duplicative motion practice, discovery, and potentially resulting inconsistent rulings. The courts and the parties will benefit greatly from briefing and deciding these issues in a coordinated manner, and without requiring seven (or more) districts to address essentially the same issues.

Lowe's objection is unsupported. Section 1407 transfer for centralized pretrial proceedings in the Northern District of California is appropriate.

## ARGUMENT

**I.     THE NUMBER OF ACTIONS HERE IS APPROPRIATE FOR CENTRALIZATION.**

Lowe suggests that eight actions, and counting, are not sufficient in number to be centralized. *See* Dkt. 28 at 3-4.[3] As a preliminary matter, there are now nine Actions at issue. Despite arguing that the "mere possibility" of additional actions being filed does not warrant centralization (*id.*), seven days after filing Lowe's response (Dkt. 28), counsel for Lowe filed such an additional action (*Hoose v Apple Inc.*) against Apple in the Northern District of California involving the same factual allegations and the same claims (Dkt. 32).

Where the Actions present common issues of fact to each other—as they do here—the Panel frequently grants motions to centralize where even fewer actions than nine are pending. *See,*

---

[3] Lowe's suggestion that there are "only three" cases for the purpose of this Motion is wrong. Dkt. 28 at 4. There are nine separate and distinct Actions with three unique sets of lead counsel currently pending before nine different judges. The parties have treated each of the Actions separately and made separate filings, even when seeking the same relief.

3

*e.g., In re Broiler Chicken Grower Antitrust Litig. (NO. II)*, No. MDL 2977, 2020 WL 7382269, at *3 (J.P.M.L. Dec. 15, 2020) (four actions and one tag-along action); *In re Secondary Ticket Mkt. Refund Litig.*, 481 F. Supp. 3d 1345, 1347 (J.P.M.L. 2020) (four actions); *In re: Schnuck Markets, Inc., Customer Data Sec. Breach Litig.*, 978 F. Supp. 2d 1379, 1381–82 (J.P.M.L. 2013) (four actions and one tag-along action); *In re Chrysler LLC 2.7 Liter V-6 Engine Oil Sludge Prod. Liab. Litig.*, 598 F. Supp. 2d 1372, 1374 (J.P.M.L. 2009) (five actions and one tag-along action).

Lowe's reliance on inapposite cases—which all involved fewer actions for centralization—fails to demonstrate otherwise. *See* Dkt. 28 at 3–4 (citing *Foley v. Transocean Ltd. In re Transocean Ltd. Sec. Litig. (No. II),* 753 F. Supp. 2d 1373, 1374 (J.P.M.L. 2010) (two actions); *In re Corvette Z06 Mktg. & Sales Practices Litig.*, 289 F. Supp. 3d 1348, 1349 (J.P.M.L. 2018) (four actions); *In re Xytex Corp. Sperm Donor Prods. Liab. Litig.*, 223 F. Supp. 3d 1351, 1352 (J.P.M.L. 2016) (six actions; significant plaintiff-specific factual and legal questions and unlikely that additional actions would be filed); *In re Sirius XM Radio, Inc., Tel. Consumer Prot. Act (TCPA) Litig.*, 118 F. Supp. 3d 1376 (J.P.M.L. 2015) (five actions; centralization would result in substantial delays where pending action significantly more advanced); *In re Louisiana-Pacific Corp.*, 867 F. Supp. 2d 1346, 1347 (J.P.M.L. 2012) (five actions and two tag-along actions; one action was significantly more advanced); *In re Boehringer Ingelheim Pharms., Inc.*, 763 F. Supp. 2d 1377, 1378 (J.P.M.L. 2011) (substantial disparity in the procedural progress of the four actions); *In re: California Wine Inorganic Arsenic Levels Prod. Liab. Litig.*, 109 F. Supp. 3d 1362 (J.P.M.L. 2015) (two actions and two tag-along actions); *In re Qualitest Birth Control Prod. Liab. Litig.*, 38 F. Supp. 3d 1388 (J.P.M.L. 2014) (two actions).)

## II. THE ACTIONS SHARE SIGNIFICANT COMPLEX FACTUAL ISSUES.

Centralization is appropriate because the Actions share common questions of fact. 28 U.S.C. § 1407(a). Lowe concedes this point but attempts to minimize it by claiming that the common facts are "not so complex" as to warrant centralization. Dkt. 28 at 5.

In its Motion, however, Apple explained that the Actions share numerous, identical factual allegations concerning Apple's mobile operating system (iOS); the development of many third-party apps; the operation and functionality of the apps and in-app purchases; and Apple's guidelines, agreements, review, and publication of the games on Apple's App Store. *See* Dkt. 1-1 at 5-7 (citing All Complaints, ¶¶ 1, 6-16).[4] These issues make this case significantly different than the cases on which Lowe relies. *See* Dkt. 28 at 4-6.

Those cases involved issues such as whether dog treats were contaminated by a common source (*In re: Waggin' Train Chicken Jerky Pet Treat Prod. Liab. Litig.*, 893 F. Supp. 2d 1357, 1358 (J.P.M.L. 2012) (three actions and four tag-along actions)) and whether deceptive marketing of toothpaste caused consumers to pay higher prices (*In re: Crest Sensitivity Treatment & Prot. Toothpaste Mktg. & Sales Practices Litig.*, 867 F. Supp. 2d 1348 (J.P.M.L. 2012) (three actions)).

---

[4] To the extent Lowe argues centralization is inappropriate because "the legal causes of actions vary, and the putative classes … are different," (Dkt. 28 at 2) she is incorrect. "The presence of state law claims or statewide putative classes" is not "an impediment to centralization, as it is within the very nature of coordinated or consolidated pretrial proceedings in multidistrict litigation for the transferee judge to be called upon to apply the law of more than one state." *In re CVS Caremark Corp. Wage & Hour Employment Practices Litig.*, 684 F. Supp. 2d 1377, 1378 (J.P.M.L. 2010) (citation omitted). The "presence of additional or differing legal theories is outweighed when the underlying actions still arise from a common factual core, as the actions here do." *In re Fedex Ground Package Sys., Inc., Employment Practices Litig. (No. II)*, 381 F. Supp. 2d 1380, 1381 (J.P.M.L. 2005); *see also In re Inclusive Access Course Materials Antitrust Litig.*, No. MDL 2946, 2020 WL 4670703, at *2 (J.P.M.L. Aug. 11, 2020) (centralizing litigation of non-overlapping putative class and causes of action where "all actions arise from a common factual core").

Lowe's other authorities are also distinguishable. Dkt. 28 at 4-6 (citing *In re: Trilegiant Membership Program Mktg. & Sales Practices Litig.*, 828 F. Supp. 2d 1362, 1363 (J.P.M.L. 2011) (denying transfer of six actions and one tag-along action that shared factual questions but significant differences in the defendants involved would "reduce any efficiencies to be gained by centralization"); *In re Royal Am. Indus., Inc. Sec. Litig.*, 407 F. Supp. 242, 244 (J.P.M.L. 1976) (denying transfer of two actions where discovery concerning merger agreement would not be "time-consuming")).

Moreover, Lowe's reliance on *Royal American Industries* (Dkt. 28 at 5) is further misplaced because, unlike here, a transfer there—whether transfer of the Florida plaintiffs' action to Delaware or the Delaware plaintiffs' action to Florida—would have caused "inconvenience to the party whose action is being transferred and its witnesses." 407 F. Supp. 242 at 243. Here—in sharp contrast—a Section 1407 transfer to the Northern District of California would not inconvenience plaintiffs since it is the district where Lowe filed her action, where the other potential tag-alongs are pending, and where the plaintiffs in the Original Actions are in favor of having their cases centralized. *Id.*

If the Actions were to proceed separately, judges in at least seven different districts would be required to address these common factual issues. *See In re: BP Prod. N. Am., Inc., Antitrust Litig. (No. II)*, 560 F. Supp. 2d 1377, 1379 (J.P.M.L. 2008) (rejecting arguments that the common questions of fact were not complex and that alternative means of coordination would be preferable, determining that "[t]hese seventeen actions [pending in two districts] present overlapping and, in many instances, nearly identical factual allegations that will likely require duplicative discovery and motion practice."). To the extent discovery issues unique to the individual cases arise, they

could be appropriately addressed by the transferee judge. *See In re: Darvocet, Darvon & Propoxyphene Prod. Liab. Litig.*, 780 F. Supp. 2d 1379, 1381 (J.P.M.L. 2011) ("Transferee judges can accommodate common and individual discovery tracks, gaining the benefits of centralization without delaying or compromising consideration of claims on their individual merits."); *In re: Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, Prod. Liab. Litig.*, 704 F. Supp. 2d 1379, 1382 (J.P.M.L. 2010) (observing that any necessary individual discovery is "regularly and successfully coordinated" with the other actions).

**III.   INFORMAL COORDINATION WOULD BE UNLIKELY TO ACHIEVE THE EFFICIENCIES AND CONSISTENT RULINGS ACHIEVABLE THROUGH CENTRALIZATION.**

Finally, Lowe stands alone and disagrees with other plaintiffs in suggesting that informal coordination among the parties and involved judges is an adequate alternative to formal centralization. But as Apple has already explained, there is no "reasonable prospect" that Section 1404 transfer would "eliminate the multidistrict character of the litigation." *Schnuck Markets*, 978 F. Supp. 2d at 1380–81. As an initial matter, there is no guarantee that each court will approve a Section 1404 transfer: "the outcome of that motion practice is uncertain, as is the timing of the various courts' rulings." *In re Zetia (Ezetimibe) Antitrust Litig.*, 325 F. Supp. 3d 1369, 1370 (J.P.M.L. 2018) (centralizing seven actions); *see also Schnuck Markets*, 978 F. Supp. 2d at 1380–81 (recognizing discretionary nature of Section 1404 transfers); *In re Inclusive Access Course Materials Antitrust Litig.*, 482 F. Supp. 3d 1358, 1359 (J.P.M.L. 2020) (rejecting consolidation via Section 1404 transfers and noting that "with six potential tag-along actions already on file, the possibility of additional actions cannot be discounted").

7

Further, the Actions present overlapping and, in many instances, nearly identical factual allegations that will likely require duplicative discovery and motion practice. "While it is possible that Section 1404 motions could be filed in all the actions, … centralization of this litigation is most appropriate now. It expeditiously places all related actions before a single judge who can ensure that pretrial proceedings are conducted in a streamlined manner leading to the just and efficient resolution of all actions." *In re Fisher-Price Rock 'N Play Sleeper Mktg., Sales Practices, & Prod. Liab. Litig.*, 412 F. Supp. 3d 1357 at 1360 (J.P.M.L. 2019). *See also In re Generic Pharm.*, 2017 WL 4582710, at *2 ("informal coordination and cooperation among the parties and courts" is not "sufficient to eliminate the potential for duplicative discovery, inconsistent pretrial rulings, and conflicting discovery obligations"). Moreover, the presence of overlapping putative class definitions in the Actions here is also a strong factor in favor of Section 1407 centralization "to prevent inconsistent pretrial rulings, including with respect to class certification." *Fisher-Price*, 412 F. Supp. 3d at 1359.

The fact that there is some overlapping counsel, in and of itself, does not warrant denial of centralization. In *Chrysler*, for example, a party argued that the "presence of common counsel in four of the [five] actions supports coordination among the parties as a superior method of streamlining discovery." 598 F. Supp. 2d at 1374. The Panel expressly *rejected* that argument:

> Based upon the Panel's precedents and for the following reasons, we respectfully disagree with these arguments. These actions are nearly identical in terms of the facts alleged, and discovery undoubtedly will overlap. Centralization will enable one judge to streamline pretrial proceedings and make consistent rulings on discovery disputes, dispositive motions, and issues relating to experts. While informal coordination of these actions is commendable, Section 1407 transfer will ensure overall economies.

*Id.*

The theoretical suggestion of informal coordination deprives Apple of any certainty or the ability to enforce coordination.[5] And, importantly, multiple judges in different districts would be required to handle complex—and duplicative—discovery disputes and legal issues, risking inconsistent rulings on identical issues. This would generate the inefficiencies that centralization is intended to prevent. Thus, Section 1404 transfers and agreements to coordinate discovery are not viable alternatives to centralization under Section 1407.

## CONCLUSION

The nine Actions pending in seven districts—with more actions to follow—share significant, complex issues of fact, and only Section 1407 centralization is likely to achieve the goals of judicial economy and consistent rulings here. Therefore, Apple respectfully requests that the Panel transfer the Actions for centralization in the Northern District of California.

///
///
///

---

[5] Apple has attempted to coordinate informally, but even the act of obtaining extensions of time to respond to the complaints have demonstrated why Lowe's suggestion of informal coordination is flawed. For example, in both *Nelson* and *Lowe*, the parties filed stipulations extending Apple's time to respond to the complaints pending the Panel's determination of Apple's Motion. However, counsel in *Nelson* would not agree to the terms of the stipulation unless counsel in *Lowe* agreed to the same—and vice versa—which resulted in Apple engaging in substantial back-and-forth negotiations.

9

Dated: March 18, 2021                            Respectfully submitted,

                                                              **DLA PIPER LLP (US)**

Raj N. Shah
444 West Lake Street
Suite 900
Chicago, IL 60606
T:  312.368.8904
F:  312.251.5714
E:  raj.shah@dlapiper.com

Keara M. Gordon
1251 Avenue of the Americas
New York, NY 10020
T:  212.335.4500
F:  212.335.4501
E:  keara.gordon@dlapiper.com

*/s/ John S. Gibson*
John S. Gibson
2000 Avenue of the Stars
400 North Tower
Los Angeles, CA 90067
T:  310.595.3039
F:  310.595.3339
E:  john.gibson@dlapiper.com

Brooke Kim
401 B Street, Suite 1700
San Diego, California 92101
T:  619.699.3439
F:  619.764.6739
E:  brooke.kim@dlapiper.com

*Attorneys for Defendant Apple Inc.*